IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


EUDULIA M. ALEJANDRO,            )
                                 )
              Plaintiff,         )
                                 )    CIVIL ACTION
v.                               )
                                 )    No. 04-4169-JAR-JTR
                                 )
MICHAEL J. ASTRUE,[1]            )
Commissioner of Social Security, )
                                 )
              Defendant.         )
_____ )


REPORT AND RECOMMENDATION

Plaintiff seeks review of a final decision of the Commissioner of Social Security (hereinafter Commissioner) denying disability insurance benefits under sections 216(I) and 223 of the Social Security Act.  42 U.S.C. §§ 416(I) and 423 (hereinafter the Act).  The matter has been referred to this court for a report and recommendation.  The court recommends the Commissioner's decision be REVERSED and the case be REMANDED in accordance with this opinion.

I.   Background

_____

[1]On Feb. 12, 2007, Michael J. Astrue was sworn in as Commissioner of Social Security.  In accordance with Rule 25(d)(1) of the Federal Rules of Civil Procedure, Mr. Astrue is substituted for Commissioner Jo Anne B. Barnhart as the defendant.  In accordance with the last sentence of 42 U.S.C. § 405(g), no further action is necessary.

Plaintiff's application for disability insurance benefits was denied initially, upon reconsideration, and after a hearing before an Administrative Law Judge (ALJ). (R. 16, 24-44). Plaintiff requested and was denied review by the Appeals Council (R. 98-103), and filed the instant action in the District Court. (Doc. 1). Before answering the complaint, the Commissioner sought and was granted remand pursuant to the sixth sentence of 42 U.S.C. § 405(g). (R. 45-51); (Doc. 10, 11).

On remand, a supplemental hearing at which plaintiff was represented by an attorney was held before a second ALJ. (R. 16, 713-63). At the hearing, testimony was taken from plaintiff, a medical expert, and a vocational expert. (R. 16, 713, 714). Thereafter, the ALJ issued a decision in which he found alternatively, that plaintiff is able to perform her past relevant work as a data entry operator or is able to perform other work available in significant numbers in the economy. (R. 20).

The ALJ found that plaintiff has severe impairments consisting of status post craniotomy, osteoarthritis, possible right S1 radiculopathy, obstructive sleep disorder, and hypertension, but that she has no severe mental impairments. (R. 18). He found that plaintiff has no impairment or impairments which meet or equal the severity of an impairment included in the Listing of Impairments. <u>Id.</u>

-2-

The ALJ found the opinions of the state agency physicians and psychologist consistent with the overall record and gave them "some weight," and found the testimony of the medical expert credible, and gave that opinion "great weight." Id. He considered and evaluated plaintiff's allegations regarding the severity of her symptoms and found them "not fully credible" because they are inconsistent with and unsupported by the medical evidence and the overall record. (R. 20). He assessed plaintiff with the residual functional capacity (RFC) to lift and carry no more than twenty pounds, to stand and/or walk two hours in a workday, and to sit for six hours in a workday, but she cannot squat, kneel, or climb, and gets dizzy spells once a week. Id.

Based upon the RFC assessed and the testimony of the vocational expert, the ALJ found that plaintiff is able to perform her past work as a data entry operator. Id. The ALJ continued with the fifth step of the evaluation process "in an abundance of caution." Id. Based upon the vocational expert's testimony, plaintiff's age, education, vocational experience, and RFC, and using Rule 202.07 of the medical-vocational guidelines as a framework, the ALJ determined that there are other jobs of which plaintiff is capable existing in the economy in significant numbers. Id. Consequently, he determined that plaintiff is not disabled within the meaning of the Act (R. 20), and denied her application. (R. 22).

After the ALJ issued his decision denying benefits, the Commissioner filed the Social Security Administrative Record with this court and filed an answer to plaintiff's complaint.  (Doc. 16).  Briefing has been completed and the case is ripe for decision.

## II.  Legal Standard

The court's review is guided by the Act.  42 U.S.C. § 405(g).  "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  Id. The court must determine whether the findings are supported by substantial evidence in the record and whether the correct legal standard was applied.  White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but less than a preponderance, and is satisfied by such evidence as a reasonable mind might accept to support the conclusion.  Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency."  White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Serv., 933 F.2d 799, 800 (10th Cir. 1991)).  However, the determination of whether substantial evidence supports the Commissioner's decision is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere

-4-

conclusion.  <u>Gossett</u>, 862 F.2d at 804-05; <u>Ray v. Bowen</u>, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if she can establish that she has an impairment which prevents her engaging in substantial gainful activity and is expected to result in death or to last for at least twelve months.  The impairment must be of such severity that claimant is not only unable to perform her previous work, but cannot, considering her age, education, and work experience, engage in any other substantial gainful work existing in the economy.  42 U.S.C. § 423(d).

The Commissioner has established a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. § 404.1520 (2005); <u>Allen v. Barnhart</u>, 357 F.3d 1140, 1142 (10th Cir. 2004); <u>Ray</u>, 865 F.2d at 224.  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." <u>Williams v. Bowen</u>, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether the claimant has engaged in substantial gainful activity since the onset of her disability, whether she has severe impairments, and whether the severity of her impairments meets or equals any listing in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  <u>Id.</u> at 750-51.  If plaintiff's impairment does not meet or equal a listed impairment, the

Commissioner assesses claimant's RFC.  20 C.F.R. § 404.1520(e).
This assessment is used at both step four and step five of the
process.  Id.

     After assessing claimant's RFC, the Commissioner evaluates
steps four and five, whether the claimant can perform her past
relevant work, and whether she is able to perform other work in
the national economy.  Williams, 844 F.2d at 751.  In steps one
through four the burden is on claimant to prove a disability that
prevents performance of past relevant work.  Dikeman v. Halter,
245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751
n.2.  At step five, the burden shifts to the Commissioner to show
other jobs in the national economy within plaintiff's capacity.
Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

     Plaintiff claims error in evaluating the credibility of her
allegations of disabling symptoms; in evaluating the medical
opinions of Dr. Watts, the medical expert, and of Dr. Schmidt, a
treating physician; in propounding a hypothetical question which
failed to include all of plaintiff's limitations; and in failing
to find that obesity is a severe impairment in the circumstances
of this case.  The Commissioner argues that the evidence in the
record as a whole during the relevant time period supports the
ALJ's reasons for finding plaintiff's allegations not fully
credible; that the ALJ properly evaluated the opinion of the
medical expert and did not rely upon the opinion of Dr. Schmidt

-6-

which was formulated three years before the alleged onset of
disability; that the ALJ based his hypothetical question upon a
properly formulated RFC assessment; and plaintiff points to no
evidence of record indicating that plaintiff had any limitations
resulting from obesity.  The court will address the issues in the
order they would be reached in applying the sequential evaluation
process.

**III. Step Two, Whether Obesity Is a Severe Impairment**

     An impairment is not considered severe if it does not
significantly limit plaintiff's ability to do basic work
activities such as walking, standing, sitting, carrying,
understanding simple instructions, responding appropriately to
usual work situations, and dealing with changes in a routine work
setting.  20 C.F.R. § 404.1521.  The Tenth Circuit has
interpreted the regulations and determined that to establish a
"severe" impairment at step two of the sequential evaluation
process, plaintiff must make only a "de minimis" showing.  Hinkle
v. Apfel, 132 F.3d 1349, 1352 (10th Cir. 1997).  Plaintiff need
only show that an impairment would have more than a minimal
effect on her ability to do basic work activities.  Williams, 844
F.2d at 751.  However, she must show more than the mere presence
of a condition or ailment.  Id. (citing Bowen v. Yuckert, 482
U.S. 137, 153 (1987)).  If an impairment's medical severity is so
slight that it could not interfere with or have a serious impact

-7-

on plaintiff's ability to do basic work activities, it could not prevent plaintiff from engaging in substantial work activity and will not be considered severe.  <u>Hinkle</u>, 132 F.3d at 1352.

Here, plaintiff points to record evidence regarding her height, weight, and body mass index, argues that she is "obese" pursuant to the National Institutes of Health guidelines, and claims that the ALJ should have found her obesity to be a severe impairment.  (Pl. Br. 55).  The Commissioner notes that there is no specific weight or body mass index which equates to a severe impairment within the meaning of the Act and argues that plaintiff has pointed to no diagnosis of obesity and to no record evidence suggesting she has limitations caused by obesity. (Comm'r Br., 13-14).

The court agrees with the Commissioner.  Although there is substantial evidence from which one might find that plaintiff is obese, plaintiff points to no evidence in the record that she was, in fact diagnosed with obesity, or that her obesity has more than a minimal effect on her ability to do basic work activities. In her reply brief, plaintiff claims the Commissioner's argument is merely "post hoc rationalization" presented in an attempt to salvage the ALJ's failure to make an individualized assessment of the impact of obesity on plaintiff's functioning.  (Reply, 14-15).  Plaintiff's argument ignores that the burden at step two is on plaintiff to show more than the mere presence of obesity; she

must show that obesity has more than a minimal impact on her
ability to perform basic work activities.  <u>Williams</u>, 844 F.2d at
751.  Here, she has shown evidence from which one might conclude
that she has the impairment of obesity despite the lack of a
diagnosis to that effect.  However, she has not directed the
court's attention to any evidence that obesity has more than a
minimal impact on her ability to perform basic work activities.
The evidence does not show that plaintiff's obesity is "severe"
within the meaning of the Act, and the ALJ's alleged failure in
not making such a finding is not error.

## IV. Evaluation of Medical Opinions of the Medical Examiner and of the Treating Physician

All evidence from nonexamining medical sources such as state
agency physicians and medical experts is considered opinion
evidence.  20 C.F.R. § 404.1527(f).  Such opinions must be
evaluated using the regulatory factors--(1) length of treatment
relationship and frequency of examination; (2) the nature and
extent of the treatment relationship, including the treatment
provided and the kind of examination or testing performed;
(3) the degree to which the physician's opinion is supported by
relevant evidence; (4) consistency between the opinion and the
record as a whole; (5) whether or not the physician is a
specialist in the area upon which an opinion is rendered; and
(6) other factors brought to the ALJ's attention which tend to
support or contradict the opinion--and the ALJ must explain in

the decision the weight given the opinions of the nonexamining sources.  Id., § 404.1527(f)(2)(ii & iii).

Plaintiff claims the ALJ erred when he gave "great weight" to the medical expert's opinion but did not discuss any of the regulatory factors regarding the weight to be given that opinion, and when he adopted the 1997 RFC assessment of Dr. Schmidt (adding only that plaintiff "gets dizzy spells once a week) without discussing any of the regulatory factors with regard thereto.  The Commissioner argues that the ALJ did not base his RFC assessment upon the findings of any one physician, and specifically did not base the assessment upon the opinion of Dr. Schmidt, which was not formed during the time period under consideration.  (Comm'r Br., 10).  The Commissioner argues that the ALJ stated he based his RFC assessment upon the overall record and the medical expert's testimony explaining the record. Id. (citing (R. 18)).  Finally, the Commissioner argues that plaintiff has not alleged any prejudice resulting from the alleged errors.  (Comm'r. Br., 11).

Contrary to the Commissioner's argument, the ALJ based his RFC assessment primarily upon Dr. Schmidt's 1997 RFC assessment despite the fact that (as the Commissioner points out) the assessment was made three years before the date plaintiff alleges her disability began.  The Commissioner's argument that the ALJ based his RFC assessment on the overall record and the medical

-10-

expert's testimony is based upon a citation to the ALJ's step
three finding:  "Based on the overall record and the medical
expert's testimony, the undersigned finds that the claimant does
not have an impairment or combination of impairments which meets
or equals in severity the clinical criteria of any impairment
listed in" the Listing of Impairments.  (R. 18)(cited at Comm'r
Br., 10).  In his RFC assessment, however, the ALJ stated:

> After reviewing the entire record, <u>especially Exhibit
> 20F</u>, the undersigned finds that the claimant can lift
> and carry no more than a maximum of 20 pounds.  The
> claimant can stand and/or walk for 2 hours in an 8 hour
> day and sit for 6 hours in an 8 hour day with normal
> breaks and rest periods.  The claimant cannot squat,
> kneel or climb.  She gets dizzy spells once a week.

(R. 20)(emphasis added).  Exhibit 20F, to which the ALJ referred,
is Dr. Schmidt's release to return to work after treatment for
plaintiff's knee, and is dated Feb. 24, 1997:

> Restrictions: The patient is released from care at this
> time with the following activity restrictions: She is
> to avoid standing or walking longer than 2 hours per
> working day. Therefore, she will need to sit up to 6
> hours per working day. She is to avoid squatting,
> kneeling, or climbing activities and she should avoid
> lifting over 20 pounds.

(R. 532).  As plaintiff points out, the ALJ's RFC assessment is
identical with Dr. Schmidt's restrictions, except that the ALJ
added that plaintiff "gets dizzy spells once a week."  The ALJ
stated that his RFC assessment was made "especially" after
reviewing Exhibit 20F.  The ALJ mentioned no other source upon
which his RFC assessment might be based, and the court finds

-11-

none.  The RFC assessment forms completed by the state agency
physicians opine that plaintiff is able to lift fifty pounds
occasionally and twenty-five pounds frequently, may sit, and
stand and/or walk about six hours in a workday, and has no
postural or environmental limitations.  (R. 426-34, 502-12).
While the ALJ stated he gave the opinions of the state agency
physicians "some weight," the only limitation which he credited
from those opinions was that plaintiff is able to sit for six
hours in a workday.  The court finds that the ALJ's RFC
assessment was primarily based upon Dr. Schmidt's opinion.

The release represents the doctor's opinion regarding
plaintiff's limitations on Feb. 24, 1997, three years before
plaintiff's alleged onset date of Feb. 1, 2000 and nine years
before the ALJ's decision on Mar. 31, 2006.  On its face, it says
nothing about plaintiff's limitations during the time after Feb.
2000 through the date of the ALJ's decision.  Yet, other than the
one citation to Exhibit 20F, the ALJ makes no mention of Dr.
Schmidt or of his opinion.  He does not explain in any fashion
why the doctor's opinion should be accepted and should be applied
to plaintiff's condition nine years after that opinion was
formed.  He makes no discussion of any of the regulatory factors
which might be relevant to an inquiry with regard to Dr.
Schmidt's opinion.  This is reversible error.

The Commissioner argues that plaintiff has shown no prejudice resulting from the failure to address specific regulatory factors, and that the decision was articulated "in such a way as to permit meaningful judicial review." (Comm'r Br. 11). The court disagrees. The prejudice presented by the failure to discuss the regulatory factors and explain why Dr. Schmidt's opinion is worthy of acceptance nine years after it was formed is that the court is unable to review that determination. The court cannot determine from the decision what factors led the ALJ to credit Dr. Schmidt's opinion. Therefore, it cannot determine whether substantial evidence in the record supports the ALJ's determination. The court may not weigh the evidence in the first instance and make a <u>de novo</u> assessment of plaintiff's RFC. <u>White</u>, 287 F.3d at 905. Remand is necessary for the Commissioner to make a determination and support that determination with substantial evidence from the record.

With regard to the opinions of the medical expert, Dr. Watts, the ALJ did not specifically discuss the regulatory factors relevant to a determination of the weight given those opinions. However, the ALJ did note that Dr. Watts is "a board certified medical internist and cardiologist" (R. 18), a statement which relates to the fact that Dr. Watts is a specialist in the area upon which his opinion was rendered. However, the ALJ did not discuss at all the factors which are

perhaps most crucial in determining whether the opinion of a non-
examining medical expert should be accepted--the degree to which
the physician's opinion is supported by relevant evidence, and
the consistency between the opinion and the record as a whole.
So far as the decision reveals, the ALJ merely accepted the
medical expert's opinion because he was a medical expert
qualified to render an opinion on the matters at issue.  More is
needed before the court may determine whether substantial
evidence on the record as a whole supports the ALJ's decision to
credit the medical expert's opinion.  The court may not simply
weigh the evidence itself and make a <u>de novo</u> decision.  <u>White</u>,
287 F.3d at 905.  On remand, the Commissioner must properly
evaluate the medical expert's opinion and support his
determination with substantial evidence in the record and an
explanation of why the opinion is credited.

**V.   Credibility of Plaintiff's Allegations of the Severity of Her Symptoms**

An ALJ's credibility determinations are generally treated as
binding on review.  <u>Talley v. Sullivan</u>, 908 F.2d 585, 587 (10th
Cir. 1990).  "Credibility determinations are peculiarly the
province of the finder of fact."  <u>Diaz v. Sec'y of Health & Human
Serv.</u>, 898 F.2d 774, 777 (10th Cir. 1990).  Therefore, in
reviewing the ALJ's credibility determinations, the court will
usually "defer to the ALJ as trier of fact, the individual
optimally positioned to observe and assess witness credibility."

-14-

Casias v. Sec'y of Health & Human Serv., 933 F.2d 799, 801 (10th
Cir. 1991).  However, "[f]indings as to credibility should be
closely and affirmatively linked to substantial evidence and not
just a conclusion in the guise of findings."  Huston v. Bowen,
838 F.2d 1125, 1133 (10th Cir. 1988).

Here, plaintiff argues that "although the ALJ did recite
credibility factors in his decision, and discussed a few of them,
he did not properly consider, discuss, evaluate and weigh the
evidence.  The ALJ's errors cause faulty findings regarding
Plaintiff's credibility, symptoms, testimony and limitations."
(Pl. Br., 37).  Plaintiff explains for fifteen pages how the ALJ
should have properly viewed the evidence.  (Pl. Br., 37-52).
Much of plaintiff's argument rests upon evidence which plaintiff
"said," "noted," "indicated," "addressed," "responded,"
"complained," "reported," or "stated."  Id., passim.  The ALJ is
charged with determining the credibility of plaintiff's
allegations of the degree of severity of her symptoms.  To expect
the ALJ to accept plaintiff's testimony, reports, statements,
responses, or complaints at face value in making his evaluation
of credibility is to presume and decide in advance that
plaintiff's allegations are credible.  The law does not require
such an analysis.

The mere fact that there is evidence which might support a
finding contrary to the ALJ's will not establish error in the

ALJ's credibility determination.   "[T]he possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's findings from being supported by substantial evidence."   Cruse v. Bowen, 867 F.2d 1183, 1184 (8th Cir. 1989) (quoting Consolo v. Fed. Maritime Comm'n, 383 U.S. 607, 620 (1966)).   Therefore, where the ALJ has reached a reasonable conclusion that is supported by substantial evidence in the record, the court will not reweigh the evidence and reject that conclusion even if it might have reached a contrary conclusion in the first instance.

Because the Commissioner must re-evaluate the medical opinions on remand, he will necessarily re-evaluate the credibility of plaintiff's allegations and the determinations made at step four and step five.   The court will not presume to dictate a result in those evaluations.   The court would note, however, that plaintiff is correct in stating that the ALJ may not state his own medical opinion that, "By nature calluses are not expected to last more than 12 months in duration."   (Pl. Br., 50)(quoting (R. 19)).   The ALJ may not rely upon such "facts" without citing to medical authority.   See e.g., Winfrey v. Chater, 92 F.3d 1017, 1022 (10th Cir. 1996) (ALJ may not impose personal medical opinion even if supported by medical tests); Kemp v. Bowen, 816 F.2d 1469, 1475 (10th Cir. 1987) (findings not supported by medical evidence in record represent ALJ's personal

-16-

medical opinion); <u>Geubelle v. Barnhart</u>, No. 02-1297-WEB, 2003 WL 22853100, at *5 (D. Kan. Sept. 26, 2003) (ALJ may not make medical judgment based upon general characterization); <u>Alexander v. Barnhart</u>, 287 F. Supp. 2d 944, 963 (E.D. Wis. 2003) (ALJ not expert on medical signs typically associated with chronic musculoskeletal pain); <u>Bolan v. Barnhart</u>, 212 F. Supp. 2d 1248, 1262 (D. Kan. 2002) ("the ALJ is not entitled to <u>sua</u> <u>sponte</u> render a medical judgment of what he thinks are the clinical signs typically associated with chronic musculoskeletal pain without some type of support for this determination"); <u>Rice v. Sullivan</u>, No. 89-4102-R, 1991 WL 33436, at *6 (D. Kan. Feb. 13, 1991) (ALJ not in position to render medical judgment).  The Commissioner may cite to record evidence which supports a proposition, he may cite to appropriate medical authority, or in a proper case he may take administrative notice of medical facts. Neither he nor an ALJ, however, may state a personal medical opinion, or assert medical facts without citation supporting those facts.

Because the court remands this case for proper evaluation and explanation regarding the weight given to medical opinions, it need not address plaintiff's claim that the hypothetical question propounded to the vocational expert did not include all of plaintiff's limitations.

**IT IS THEREFORE RECOMMENDED** pursuant to the fourth sentence of 42 U.S.C. § 405(g) that the Commissioner's decision be REVERSED and that JUDGMENT be entered REMANDING this case for further proceedings in accordance with this opinion.

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review.  Hill v. SmithKline Beecham Corp., 393 F.3d 1111, 1114 (10th Cir. 2004).

Dated this 25th day of May 2007, at Wichita, Kansas.


s/John Thomas Reid
**JOHN THOMAS REID**
**United States Magistrate Judge**

-18-